IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, § | | |
| Plaintiff § | | |
| § | CIVIL ACTION NO. | |
| v. § | | |
| § | _____ | |
| § | | |
| HARRIS COUNTY HOUSING AUTHORITY; § | | |
| TOM MCCASLAND, individually and in § | | |
| his official capacity as CEO of the Harris § | | |
| County Housing Authority; HORACE § | | |
| ALLISON, individually and in his official § | | |
| capacity as Hearing Officer of the Harris § | | |
| County Housing Authority; DEBRA § | | |
| MCCRAY, individually and in her official § | | |
| capacity as HCV Supervisor of the Harris § | | |
| County Housing Authority; and BEVERLY § | | |
| BURROUGHS, individually and in her official § | | |
| capacity as Director of HCV Programs of the § | | |
| Harris County Housing Authority, § | | |
| Defendants § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

PRELIMINARY STATEMENT

1.      This is an action for compensatory, punitive, attorney's fees, equitable, as well as monetary relief to redress the Defendants' unlawful discriminatory actions against Plaintiff Jane Doe[1] because of her disability in violation of Sections 804 and 818 of the Fair Housing Act and Section 504 of the Rehabilitation Act of 1973.

---

[1] "Jane Doe" is a pseudonym.  Ms. Doe, as a person suffering from mental disabilities, asks that her true identity not be disclosed publicly in this litigation as public knowledge of her disabilities and the discrimination she has suffered could subject her to additional psychological harm and emotional distress.  Plaintiff will make appropriate information about her identity available to Defendants in discovery.

2. In addition, Defendants illegally reduced and terminated Plaintiff's housing subsidy under the Section 8 Housing Voucher Program. The reasons given by Defendants were not true or were not a legitimate basis for their actions, which were retaliatory in nature. Defendants' actions violated the federal housing statutes and regulations governing the Section 8 Housing Voucher Program and constituted an arbitrary denial of Plaintiff's constitutional rights, for which Plaintiff seeks relief under 42 U.S.C. § 1983.

3. Defendants' conduct was knowing and malicious towards Plaintiff, which has caused Plaintiff to suffer substantial economic and non-economic damages.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 U.S.C. §1331, 28 U.S.C. §1337, 28 U.S.C. §1343, and 28 U.S.C §2201. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful discrimination alleged herein occurred in this district, the Southern District of Texas.

## PLAINTIFF

5. Plaintiff, Jane Doe, is an individual and a citizen of the United States. She has resided within Harris County, Texas, at all times relevant to this lawsuit.

## DEFENDANTS

6. Defendant, Harris County Housing Authority, is a locally established and administered public body situated in Houston, Texas. It administers the Section 8 Housing Voucher Program in Harris County, Texas. Its actions complained of here by Plaintiff were under color of law. As a public housing authority, the Harris County Housing Authority is a "unit of government" and its functions "are essential governmental functions and not proprietary

functions." Tex. Local Gov't Code §392.006. The Housing Authority maintains its principal place of business at 8933 Interchange Drive, Houston, Texas 77054.

7. Defendant, Tom McCasland, is sued individually and in his official capacity as former President and CEO of the Harris County Housing Authority. He was the final decision-maker who upheld the illegal termination of Plaintiff's Section 8 housing voucher. His actions were all under color of local law as President and CEO of the Harris County Housing Authority.

8. Defendant, Horace Allison, is sued individually and in his official capacity as the Hearing Officer of the Section 8 Housing Voucher Program administered by the Harris County Housing Authority. Mr. Allison participated directly in the actions of which Plaintiff complains, and these actions were under color of law. Mr. Allison may be served at his office at 8933 Interchange Drive, Houston, Texas 77054.

9. Defendant, Debra McCray, is sued individually and in her official capacity as the HCV Supervisor of the Section 8 Housing Voucher Program administered by the Houston Housing Authority. Ms. McCray participated directly in the actions of which Plaintiff complains, and these actions were under color of law. Ms. McCray may be served at his office at 8933 Interchange Drive, Houston, Texas 77054.

10. Defendant, Beverly Burroughs, is sued individually and in her official capacity as the Director of HCV Programs of the Section 8 Housing Voucher Program administered by the Houston Housing Authority. Ms. Burroughs participated directly in the actions of which Plaintiff complains, and these actions were under color of law. Ms. Burroughs may be served at his office at 8933 Interchange Drive, Houston, Texas 77054.

## STATUTORY BACKGROUND

11. Congress enacted the Section 8 Housing Voucher Program ("the Voucher Program") in 1983. Under the Voucher Program, the Harris County Housing Authority ("the Housing Authority") signs an annual contributions contract with the United States Department of Housing and Urban Development. The annual contributions contract authorizes the Housing Authority to enter into contracts with participating landlords for housing assistance payments on behalf of qualified low-income families such as Plaintiff.

12. Persons who seek to participate in the Voucher Program must submit an application to the Housing Authority. Because the demand exceeds the available vouchers, eligible families are initially placed on a waiting list. The Housing Authority gives a preference in admission to families who are (a) involuntarily displaced, (b) living in substandard housing or (c) paying more than fifty percent of income for rent. When a family is reached on the waiting list, it is issued a voucher. The family is responsible for finding a landlord willing to lease under the Voucher Program. The dwelling unit must meet certain housing quality standards approved by the United States Department of Housing and Urban Development.

13. When a voucher holder locates a landlord willing to lease under the Voucher Program, she must submit a request for lease approval to the Housing Authority. The Housing Authority inspects the dwelling to ensure it meets the necessary housing quality standards. Once the unit passes inspection, the Voucher Program participant signs a lease with the landlord. The Housing Authority simultaneously or subsequently signs a housing assistance payments contract with the landlord. The assistance contract sets forth the contract rent and the monthly rental subsidy that the Housing Authority will pay toward the monthly rent on behalf of the family.

14. The amount of the monthly rental subsidy paid by the Housing Authority varies depending on the family's income, the rent requested by the owner, the utilities the family must

pay, and a "payment standard" (fair market rent) established by the United States Department of Housing and Urban Development.

15.     An exception payment standard is available to persons with disabilities.  On August 1, 2013, HUD issued PIH Notice 2013-18, Revision for Requests for Exception Payment Standards for Persons with Disabilities as a Reasonable Accomodation.  The Notice states, "one of the purposes of an exception payment standard is to ensure that a family with a person with disabilities can rent a unit that meets the disabled person's needs."  The PIH Notice 2013-18 also states, "Exception payment standards must remain in effect until or unless a higher exception payment standard is warranted, requested, and subsequently approved."

16.     The Voucher Program lease term is generally for a period of one year.  At the end of the lease term, the family may either move and lease from another landlord under the Voucher Program or remain and sign another lease with the same landlord.  A family has an entitlement to continued participation in the Voucher Program so long as it meets the eligibility standards and otherwise complies with its legal obligations.  The substance of these obligations is set forth in federal regulations promulgated by the United States Department of Housing and Urban Development.  A family may be terminated from the Voucher Program only on one of the grounds set forth in the federal regulations.

17.     If the Housing Authority wishes to terminate assistance on behalf of a participating family, it must give the family notice and the opportunity for an informal pre-termination hearing.  24 C.F.R. §982.555(a)(v) and (c)(2).  A notice to terminate assistance must contain a brief statement of the reasons for the decision and a notification of the party's right to an informal hearing.  24 C.F.R. §982.555(c)(2)(i) and (ii).  Prior to the hearing, the Housing Authority must provide the family an opportunity to examine and copy any documents on which the Housing

Authority will rely at the hearing. C.F.R. §982.555(e)(2). If the family includes a person with disabilities, the Housing Authority decision concerning such action is subject to consideration of reasonable accommodation. C.F.R. §982.555(c)(2)(iv).

18. The person who conducts the hearing must issue a written decision stating the reasons for the decision. C.F.R. §982.555(e)(6). Factual determinations must be based on a preponderance of the evidence presented at the hearing. *Id.*

## FACTUAL BACKGROUND

19. Ms. Doe is an indigent individual with a total monthly income of approximately $849 per month, which includes $649 from the Supplemental Nutrition Assistance Program.

20. Ms. Doe is disabled. She suffers from mental disabilities, including Generalized Anxiety Disorder and Panic Disorder without Agoraphobia, which substantially limit her major life activities.

21. Ms. Doe has had a three bedroom voucher with the HCHA since 2008. She has been renting from her mother since 2010 when she was allowed to do so by HCHA as a reasonable accommodation for Ms. Doe's disabilities.

22. At her 2013 recertification, Ms. Doe was informed that she would not be able to keep her three bedroom voucher because of rule changes at HCHA. Ms. Doe protested the change and the way she was treated during the recertification and filed complaints with HCHA and HUD. It was only then that an issue was made of the fact she was renting from her mother, and she was informed that she would have to move. This issue was brought up by HCHA only in retaliation for Ms. Doe's fair housing complaints to HUD. Section 818 of the Fair Housing Act makes it unlawful to retaliate against any person because he or she has filed a housing discrimination complaint.

23. In a letter from Beverly Burroughs, Director of HCV Programs for the Housing Authority, HCHA arbitrarily reduced Ms. Doe's voucher from a three-bedroom to a two-bedroom voucher in October 2013. Ms. Burroughs also stated the Housing Authority had denied Ms. Doe's reasonable accommodation requests for: (1) a three or four bedroom voucher; (2) 110% of the fair market rent; and (3) being able to lease from her mother. HCHA did not give Ms. Doe notice of her right to appeal the reduction in Ms. Doe's family unit size.

24. Ms. Doe refused to move voluntarily and a mediation was set up between HCHA and Ms. Doe in an attempt to resolve the issue. Tom McCasland, HCHA's CEO who was personally involved in the decisions by HCHA at this point, attended the mediation on October 21, 2013, and agreed to accept reasonable accommodation documentation from Ms. Doe and to act in good faith. Rather than act in good faith, however, Mr. McCasland and the Housing Authority did everything it could to thwart the process, including repeatedly requesting information from Ms. Doe that had already been provided.

25. Because of the Housing Authority's actions in 2013, Ms. Doe's health suffered and she had to start seeing a therapist regularly. Ms. Doe was pregnant and was subjected to an increased risk of miscarriage. Her blood pressure increased to the point she needed monitoring and had to start seeing a cardiologist.

26. In January 2014, HCHA notified Ms. Doe it was terminating the HAP contract it had with her mother at the end of February 2014. HCHA did not give Ms. Doe notice of her right to appeal this decision. At the same time she received notice that the HAP contract would be terminated, Ms. Doe received notice of a move appointment and the fact that if she missed the appointment, the HAP contract would be renewed.

27. In March 2014, Ms. Doe was hospitalized because her blood pressure wouldn't go

down as a result of her having to continue to deal with the actions of the Housing Authority. Her medical providers had to induce labor and speed up the birth of her child because of the threat of heart attack and stroke—her medical providers were worried her organs would fail and she needed specialists around the clock.

28.     HCHA continued to pay rent in March and April 2014, as well as for half of May 2014, when the payments were arbitrarily stopped pursuant to a directive from Tom McCasland. HCHA did not give Ms. Doe notice of her right to appeal HCHA's decision to end her assistance payments in May 2014.

29.     In November 2014, HCHA scheduled an informal hearing regarding HCHA's rejection of Ms. Doe's reasonable accommodation requests. HCHA also finally gave Ms. Doe a copy of her file, though it was noticeably incomplete. Among the documents not included in the file were Ms. Doe's most recent reasonable accommodation request and supporting documentation from her medical provider. Ms. Doe asked that the hearing be postponed so that she could be better prepared and have an attorney present.

30.     Ultimately, a hearing was scheduled for January 31, 2015. In advance of the hearing, Ms. Doe's attorney requested a copy of the documents related to the hearing and received (on January 29, 2015) substantially the same incomplete file HCHA had provided to Ms. Doe in November 2014. At 4:08 p.m. on January 30, 2015, Ms. Doe's attorney pointed out the incompleteness of the file. At 4:34 p.m. the same day, Ms. Doe's attorney sent HCHA a copy of a February 2014 reasonable accommodation request, which was not in the file he was sent. At 6:32 p.m. that evening, he was emailed 274 pages of documents by Tom McCasland. A copy of the documents was also forwarded to Horace Allison, the hearing officer. Mr. McCasland stated in the email:

   The 2/17/14 Request for Reasonable Accommodation should have been included in the updated electronic file that was sent to you. It certainly is part of [Ms. Doe's] HCHA correspondence record. I will follow up with staff to see why it was not included in your electronic copy.

  31. The hearing on January 31, 2015, was conducted by Hearing Officer Horace Allison, an employee of HCHA.  Objection was made to Mr. Allison being the Hearing Officer on the basis that Mr. Allison was a subordinate of Mr. McCasland, who has been personally involved in the decisions related to Ms. Doe's participation in the HCVP.  However, the hearing proceeded anyway.  Debra McCray presented the case for HCHA, which consisted of acknowledgement of three formal reasonable accommodation requests on the part of Ms. Doe.  Ms. McCray admitted that Ms. Doe's disability was not taken into account when denying Ms. Doe's February 2014 reasonable accommodation request to be allowed to rent from a family member.  Ms. McCray also admitted that HCHA did not respond to Ms. Doe's February 2014 reasonable accommodation request for a three-bedroom voucher.  Ms. Doe's attorney then presented evidence of Ms. Doe's disabilities and explained the nexus between her disabilities and her need to rent from a family member.  Ms. Doe's attorney also presented evidence that Mr. McCasland had offered to let Ms. Doe continue renting from her mother before she filed the HUD discrimination complaint.  No evidence was presented that Ms. Doe's request was not reasonable.

  32. A letter entitled "Informal Hearing Decision" dated February 17, 2015 was received by Ms. Doe and her attorney.  The letter contained numerous false and misleading statements and inaccuracies.  Ultimately, the letter stated that HCHA's decision(s) to deny Ms. Doe's reasonable accommodation requests was upheld.  The letter also stated "Ms. Doe is encouraged to complete program re-certification and attend a move briefing."

  33. After that, Ms. Doe received two notices of move appointments, which she did not

attend because she was entitled to receive HCVP assistance where she is currently living.  On March 30, 2015, Ms. Doe received a notice her rental assistance was being terminated and informed her of her right to appeal this decision.  HCHA had denied Ms. Doe the opportunity to recertify and was now attempting to formally terminate her from the program because she refused to move from a home where she is entitled to remain.

34.   Ms. Doe requested an informal hearing on the termination and requested all documents related to the termination.  At the hearing, Horace Allison upheld the decision of the Housing Authority, despite the fact that no evidence was presented at the hearing justifying the termination of Ms. Doe's housing voucher.

35.   Ms. Doe asked the Housing Authority to reinstate her subsidy and make up the reduced or denied payments.  She based her request on the following facts: (1) Ms. Doe's subsidy was reduced and terminated without her being given an opportunity to appeal the decisions; (2) The Housing Authority's grounds for termination were retaliatory, untrue and insufficient; and (3) Ms. Doe was not given a fair hearing because the hearing officer was a subordinate of Tom McCasland, who was directly involved in the decision to terminate Ms. Doe's subsidy.  Defendant McCasland, the final decision-maker as the President and CEO of the Housing Authority, refused to reinstate Plaintiff's housing voucher subsidy.  As the final decision-maker for the Housing Authority, Defendant McCasland's decision represents the Housing Authority's official policy.

36.   In refusing to reinstate Plaintiff's subsidies under her housing voucher, Defendants acted in violation of well-established law.  They knew or should have known that their actions were in violation of the law.  Defendants acted in callous disregard of Plaintiff's legal rights.

37. Due to the Housing Authority's discrimination and wrongful actions, for nearly two years Ms. Doe worried every day about becoming homeless, to the point of being nauseous, not eating, losing weight, and hair loss.

38. On June 10, 2015, the U.S. Department of Housing and Urban Development ("HUD") issued a Formal Determination of Noncompliance, notifying the Housing Authority of HUD's determination that the Housing Authority had violated Section 504 of the Rehabilitation Act of 1973 in its reduction and termination of Ms. Doe's subsidies. Despite the issuance of the Formal Determination, Ms. Doe has to date still not been fully compensated for the harm she suffered as a result of the Housing Authority's violation of Section 504.

39. As a result of Defendants' actions, Plaintiff has suffered economic loss, emotional distress, and mental anguish. As a result of Defendants' actions, Plaintiff has been subjected to discrimination and denied the benefits of the Section 8 Voucher Program of the Harris County Housing Authority.

FIRST CAUSE OF ACTION: VIOLATIONS OF
SECTION 504 OF THE REHABILITATION ACT OF 1973

40. Paragraphs 1 – 39 are re-alleged and incorporated herein by reference.

41. HUD's Section 504 regulations at 24 C.F.R. Section 8.1 provide that no otherwise qualified individual with disabilities in the United States shall, by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Housing and Urban Development. As it receives HUD financial assistance, Harris County Housing Authority is a recipient under Section 504.

42. Despite the fact that the Housing Authority approved a requested reasonable accommodation to permit Ms. Doe to rent a dwelling from her mother in August 2010, the Housing Authority did not act in accordance with HUD regulation when it applied the restriction in 2013 after Ms. Doe's family had resided in the unit for three years.  The Housing Authority's subsequent inquiries and scrutiny of Ms. Doe's disabilities and her sons for the purpose of deciding to approve continued tenancy in the same dwelling was not warranted by regulation and subjected the family to discrimination on the basis of disability.

43. In addition, the Housing Authority failed to administer Ms. Doe's voucher and related reasonable accommodations in accordance with HUD instructions, including <u>PIH Notice 2013-18, Revision for Requests for Exception Payment Standards for Persons with Disabilities as a Reasonable Accomodation</u>, further subjecting Ms. Doe and her sons to discrimination on the basis of disability.

SECOND CAUSE OF ACTION: VIOLATIONS OF THE FAIR HOUSING ACT

44. Paragraphs 1 – 39 are re-alleged and incorporated herein by reference.

45. Section 804(f)(2) of the Fair Housing Act makes it unlawful to discriminate in sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap.  Section 804(f)(3)(B) makes it illegal to refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such personas an equal opportunity to use and enjoy a dwelling.  Section 818 in pertinent part, makes it unlawful to coerce, intimidate, threaten, or interfere with any right granted or protected by the Act.

46. An issue was not made of Ms. Doe renting from a family member until after she made a fair housing complaint to HUD.  Because this issue was brought up by HCHA only in retaliation for Ms. Doe's fair housing complaints to HUD, because a reasonable accommodation

request was initially granted allowing her to rent from a family member, and because she has since verified that a continued reasonable accommodation is necessary, the Housing Authority should not have tried to force her to move solely because she was renting from a family member. Section 818 of the Fair Housing Act makes it unlawful to retaliate against any person because he or she has filed a housing discrimination complaint.

THIRD CAUSE OF ACTION: WRONGFUL TERMINATION UNDER THE SECTION 8 HOUSING VOUCHER PROGRAM REGULATIONS

47. Paragraphs 1 – 39 are re-alleged and incorporated herein by reference.

48. Ms. Doe has been denied due process with regards to the reduction and termination of her housing assistance and well as in HCHA's decision to uphold the denial of her reasonable accommodation requests.

49. § 982.555 of the CFR states HCHA must give a participant family an opportunity for an informal hearing to consider whether the following PHA decisions relating to the individual circumstances of a participant family are in accordance with the law, HUD regulations and HCHA policies:

(i) A determination of the family unit size under the PHA subsidy standards.

(ii) A determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552).

50. Defendants reduced and terminated Ms. Doe's subsidy without giving her an opportunity to appeal those decisions. Those decisions were made without cause and despite Ms. Doe's requests for reasonable accommodation. Ms. Doe's requests for reasonable accommodation were denied without cause. Ms. Doe's housing voucher was formally terminated without cause. The Housing Authority claimed Ms. Doe had refused to provide information to the Housing Authority after Ms. Doe had provided all information requested by the Housing Authority.

51. Defendants wrongfully terminated Ms. Doe's housing voucher assistance. Ms. Doe lost her housing voucher subsidy in violation of the Section 8 termination regulations. She seeks damages, declaratory relief and injunctive relief under 42 U.S.C. § 1983.

### FOURTH CAUSE OF ACTION: DENIAL OF DUE PROCESS OF LAW AND EQUAL PROTECTION OF THE LAWS

52. Paragraphs 1 – 39 are re-alleged and incorporated herein by reference.

53. Plaintiff is entitled to due process and equal protection under the Fourteenth Amendment to the United States Constitution. Defendants violated Plaintiff's due process and equal protection rights by arbitrarily reducing and terminating her subsidy under the Section 8 Housing Voucher Program in violation of governing law and regulations. Defendants failed to give Ms. Doe the opportunity to appeal the reduction and termination of her subsidy. Defendants utilized a partial hearing officer with a known conflict of interest and failed to provide any evidence that denial of Ms. Doe's reasonable accommodation requests and termination of Ms. Doe's housing voucher was justified. Defendants' actions, under color of law, violate the right to due process and equal protection secured to Plaintiff under the Fourteenth Amendment and give rise to a cause of action under 42 U.S. §1983 for damages, declaratory relief and injunctive relief.

54. Ms. Doe was not given an opportunity to appeal the reduction in her voucher and the termination of her subsidies before those decisions on the part of the Housing Authority were put into effect in October 2013 and May 2014 respectively. Though Ms. Doe ultimately was granted informal hearings in January and April 2015, she did not receive due process because the hearing officer was a subordinate of Mr. McCasland, who had been personally involved in Ms. Doe's case since August 2013. In addition, the hearing decision letters did not accurately reflect the evidence presented at the hearings and HCHA's complete failure to provide any evidence as

to why Ms. Doe should not be allowed to continue renting from a family member or why her housing voucher should be terminated.

## ATTORNEY'S FEES

55.     Plaintiff is entitled to an award of reasonable attorney's fees and costs.

## JURY DEMAND

56.     In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands trial by jury in the above case.

## REQUEST FOR RELIEF

57.     Plaintiff requests that this court:

(1)     Find that Defendants violated Plaintiff's rights under federal law, federal regulations and the United States Constitution by their actions in discriminating and retaliating against Plaintiff and reducing and terminating the benefits under Plaintiff's housing voucher subsidy;

(2)     An order that Defendants take appropriate affirmative actions to ensure that the activities complained of in the four causes of action above are not engaged in again by them or any of their agents;

(3)     Order Defendants to pay Plaintiff the difference between the amount she has incurred in rent and the amount she would have incurred had her Section 8 voucher benefits not been reduced and terminated;

(4)     Grant Plaintiff judgment against Defendants, jointly and severally, for Plaintiff's actual damages, including mental distress;

(5)     Grant Plaintiff punitive damages in an amount appropriate to proof at trial;

(6)     Award Plaintiff her attorney's fees and court costs;

(7)     Award Plaintiff post-judgment interest on the amount of the judgment until paid at the maximum rate allowed by law; and

(8)     Grant Plaintiff such other further relief as the Court deems proper and just.

        Respectfully submitted,

        LAW OFFICES OF DAVID J. SADEGH
        10203 Birchridge Dr., Suite 210
        Humble, Texas 77338
        Tel:  832-644-6534
        Fax: 832-644-6236

By:  */s/ David J. Sadegh*
    David J. Sadegh
    State Bar No. 24052822
    Southern District ID No. 1155650
    djsadegh@sadeghlaw.com
    ATTORNEY FOR PLAINTIFF