IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TIFFANY BROWN, § | |
| Plaintiff § | |
| § | CIVIL ACTION NO. 4:15-CV-02847 |
| § | |
| v. § | |
| § | |
| HARRIS COUNTY HOUSING AUTHORITY § | |
| and HORACE ALLISON, individually and in § | |
| his official capacity as Hearing Officer of the § | |
| Harris County Housing Authority, § | |
| Defendants § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**<u>AMENDED MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff asks the court to deny Defendants' motion for summary judgment ("Defendants' Motion").

**A. Introduction**

1. Plaintiff is Tiffany Brown; Defendants are Harris County Housing Authority and Horace Allison.

2. Plaintiff sued Defendants for discrimination, retaliation, procedural due process and equal protection violations.

3. Defendants answered asserting as affirmative defenses immunity, failure to state a claim, mootness, lack of standing, punitive damages are barred, failure to mitigate, unclean hands, good faith, frivolous suit, and settlement accord and satisfaction.

**B. Facts**

4. Defendants filed a motion for summary judgment based on lack of standing, and no general dispute about any material fact regarding Plaintiff's

ineligibility, Defendants did not retaliate against Plaintiff, and Plaintiff has no damages as a matter of law.

### C. Argument & Authorities

5. The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. FED. R. CIV. PRO. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Generally, Defendants' arguments and evidence are insufficient to demonstrate an absence of genuine fact issues.

### A. Plaintiff Has Standing to Assert Claims Concerning the Amount of Rent or Back-Rent

6. On September 12, 2010, Plaintiff signed a lease with her mother, Helen Brown. *See* Defendants' Motion, Exhibit 36. The lease agreement does not waive Plaintiff's obligations in the event that HCHA fails to pay its portion of the rent. Plaintiff was liable for any rent HCHA failed to pay, along with late fees and any other amounts the landlord is entitled to under the lease agreement. When HCHA failed to timely pay the rent it was obligated to pay under the law, Plaintiff was directly harmed in that Plaintiff was, and still is, liable for any deficiency in the rent payments to Helen Brown. Therefore, Plaintiff has a "personal stake" in the dispute, and the injuries she suffered were particularized as to her. *See Raines v. Byrd*, 521 U.S. 811, 818-19, 117 S.Ct. 2312, 2317 (1997) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 & n.1 (1992)). In addition, Plaintiff is not solely alleging damages based on HCHA's failure to pay rent. Plaintiff also has claims related to the

attorney's fees she incurred and the medical issues and mental anguish she suffered as a result of Defendants' actions. These damages are not addressed in Defendants' Motion for Summary Judgment with regards to the standing issue and should preclude summary judgment on that basis.

### B. Plaintiff Can Make a Prima Facie Case of Disability Discrimination Because She is Eligible for HCV Benefits

7. There is evidence that Plaintiff is eligible for HCV benefits (and is not committing fraud on the HCHA) because she is currently in the HCV program. *See* Exhibit A, Deposition of Beverly Burroughs, Page 73, Lines 16-17. In fact, HUD determined that Plaintiff has a right to be in the program. *See Id.*, Page 73, Lines 19-20; Defendants' Exhibit 25. In addition, Beverly Burroughs, Quality Control Manager for HCHA, stated she believed that the annual recertification process is sufficient to determine if tenants are eligible to receive benefits under the program. *See* Exhibit A, Deposition of Beverly Burroughs, Page 67, Lines 12-15. Moreover, if the HCHA had any evidence for any participant that there might have been a fraud issue, it would be investigated. *See Id.*, Page 66, Lines 18-23. Therefore, the fact that Plaintiff has been through the recertification process without being terminated from the program is evidence that she is eligible for HCV Benefits and is not barred for that reason from establishing a prima facie case of disability discrimination. Finally, Defendants provide no specific evidence as to alleged fraudulent information provided by Plaintiff on her recertification forms nor do they specify what they claim Plaintiff's income actually is or what it would need to be to disqualify her from the program.

8. Defendants continue to claim that Plaintiff is not disabled despite the evidence they were provided in November of 2013. *See* Defendants' Motion Exhibit

27. Defendants claim there is no nexus between Plaintiff's disability and the accommodation of renting from her mother, but it is undisputed that Plaintiff's previous two landlords were foreclosed on and that it is difficult for Plaintiff to manage her anxiety when she is experiencing uncertainty with her housing situation. *See* Defendants' Motion Exhibit 50.  Renting from her mother was a way for Plaintiff to stabilize her housing and thereby allow her to better manage her anxiety and panic. Defendants like to focus on the "temporary" reasonable accommodation provided Plaintiff in 2008, but gloss over the distinct reasonable accommodation request made by Plaintiff in 2010 that was approved by HCHA.  *See* Defendants' Motion, Exhibit 40.  It was HCHA that approved Plaintiff's requests, with no evidence of deception or fraud in those requests, and yet Defendants somehow blame Plaintiff for HCHA's actions.  Defendants try to point to "mismanagement" in the prior HCHA administration, but Plaintiff's reasonable accommodation in 2008 was granted by then- quality control manager Beverly Burroughs, who now is Director of Program Quality for HCHA.  *See* Exhibit A, Deposition of Beverly Burroughs, Page 29, Line 1 through Page 31, Line 13, Page 18, Line 23.

### C.  There Are Genuine Issues of Material Fact as to Whether HCHA Retaliated against Plaintiff.

9. Defendants' Motion misstates Plaintiff's retaliation claim.  Plaintiff is not only, as Defendants suggest, claiming that Defendants retaliated by denying her reasonable accommodation request to rent from her mother.  Defendants admit that they had, in fact, already granted Plaintiff's reasonable accommodation request to rent from her mother in 2010.   *See* Defendants' Motion, Exhibit 40.  Defendants retaliated against Plaintiff (and continue to retaliate to this day) by making an issue of Plaintiff

renting from her mother when HUD regulations make it clear that renting from a relative is permissible if the Housing Authority determines that approving the unit would provide a reasonable accommodation. *See* 24 CFR 306(d). Moreover, the rule only applies to new admissions and to moves with continued assistance. *Id.* It should be noted that with all of Defendants' allegations that Plaintiff is in violation of the Regulations because she rents from her mother, Defendants take careful pains not to set out the actual rule itself. The rule specifically states the following:

> The PHA must not approve a unit if the owner is the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA determines that approving the unit would provide reasonable accommodation for a family member who is a person with disabilities. This restriction against PHA approval of a unit only applies at the time a family initially receives tenant-based assistance for occupancy of a particular unit, but does not apply to PHA approval of a new tenancy with continued tenant-based assistance in the same unit.

*Id.* In paragraph 61 of their motion, Defendants misstate the rule when they claim that new leases or contracts for these families may not be approved. The rule specifically allows approval of a new tenancy with continued tenant-based assistance in the same unit. *Id.*

10. It is undisputed that Plaintiff made a discrimination claim to HCHA in August 2015. Though it had not been an issue previously, HCHA retaliated by then claiming that Plaintiff was not entitled to rent from her mother unless Plaintiff was approved for another reasonable accommodation. Before making an issue of Plaintiff renting from her mother, HCHA checked to see how many of its other program participants would be affected by such a stance. *See* Exhibit A, Deposition of Beverly Burroughs, Exhibit 1. Other instances of retaliation include HCHA reducing Plaintiff's benefits and attempting to terminate their contract with Plaintiff's mother

without allowing Plaintiff the opportunity to appeal the changes in her voucher. *See* Exhibit C, Request for Reconsideration; Defendants' Motion Exhibit 25. Even when the Board was confronted with all the evidence that Plaintiff was entitled to remain in her home and HCHA's wrongful actions, HCHA refused to do the right thing until HUD finally stepped in and forced it to back off. *Id*. Though her housing voucher appears to be safe for the moment, Defendants continue to attack Plaintiff through this lawsuit in ways that go far beyond what should be acceptable in civilized litigation. Their motion and supporting memorandum make unsupported claims that Plaintiff is committing fraud, that she has deliberately lied about disabilities for which there is documented evidence and for which HCHA has already granted accommodations in the past, that she is ineligible for the voucher program and yet is too poor to be entitled to monetary damages. Defendants' attorneys feigned sympathy in her deposition and then proceeded to make a public spectacle of her life's tragedies (including the unfounded assertions that Plaintiff has an obsessive personality and an extensive criminal history, including violent crime) without regard to how it might affect her, all in the name of making the argument that she is too damaged for them to damage her. At some point Defendants should be held accountable for the pain they have inflicted (and continue to inflict) on Plaintiff.

### D.  Plaintiff Has Damages

11. As stated previously, Plaintiff does have standing to complain about HCHA's failure to make timely rent payments because Plaintiff herself was responsible for those rent payment through her lease agreement with her mother.

12. Paul Curry's affidavit claiming that Helen Brown was paid in full is

conclusory and does not provide any specific facts as to how much was owed to Helen Brown or how the payments in the attached history were calculated.  Plaintiff objects to the affidavit as it does not sufficiently demonstrate the absence of a genuine factual issue regarding whether the payments to Helen Brown were complete.  Plaintiff, on the other hand has provided a detailed explanation as to why the payments were deficient.  *See* Exhibit B, Plaintiff's Supplemental Response to Defendants' Interrogatories, No. 18.

      13.    Defendants claim that Plaintiff's damages could have been avoided if she and her mother had found another tenant.  However, Plaintiff had a right to rent from her mother and the right to stay in the unit.  Whatever harm came to Plaintiff due to Defendants' wrongful actions would have been magnified had she actually lost her home.

      14.    Similarly, Defendants argue that Plaintiff rejected the reasonable accommodation of moving out of her mother's home and so is not entitled to a monetary award.  Again, Plaintiff was entitled to rent from her mother under the circumstances, so it would have been unreasonable for her to move out of a home where she was entitled to reside.  Defendants' argument also ignores the component of Plaintiff's reasonable accommodation request that dealt with Plaintiff's disability and the additional stress and panic she would no doubt have suffered in the more uncertain situation of renting from someone other than her mother.

      15.    Defendants make the assertion that Plaintiff reported she had zero income to HCHA, and then they cite their Exhibits 5 and 6, which are reports showing that Plaintiff had a gross income of $11,112 in 2008 and $3,120 in 2009.  Defendants

assert that, as a matter of law, Plaintiff cannot receive a monetary award with no evidence of out-of-pocket expenses. However, Defendants provide no actual legal authority to support their argument. In addition to the rent deficiency for which Plaintiff is liable, Plaintiff is incurring attorney's fees at $200 an hour. *See* Exhibit B, Plaintiff's Supplemental Response to Defendants' Interrogatories, No. 18. Plaintiff was not able to get a favorable determination from HUD until after she was forced to hire an attorney. Also, Plaintiff would be entitled to reimbursement of her increased medical expenses as a result of Defendants' wrongful actions, regardless of whether those expenses were paid out of pocket or by insurance or a government program.

16. Defendants go on to argue that Plaintiff has had so much mental distress in her life that it is impossible for her to suffer mental distress as a result of Defendants' actions. Essentially, we have a Housing Authority that has taken the position that it doesn't matter if program participants are discriminated against because: 1) they are inevitably underreporting their income and are therefore ineligible anyway; 2) they are already poor and so are not entitled to monetary relief; and/or 3) any mentally distress in their life precludes the Housing Authority from being responsible for inflicting more, so there is no way for them to be eligible for compensation. Taking Defendants' arguments at face value, it would seem there is no incentive for Defendants to comply with the law, because no one in a Housing Authority program should ever recover anything in a lawsuit against the Housing Authority. Interestingly, Defendants list as one of Plaintiff's "life tragedies" the fact that her "two children supposedly fight in such a violent way that it triggers asthma attacks in the oldest child." As Fatima Escobar noted in her November 22, 2017 letter

substantiating Plaintiff's reasonable accommodation request, the conflict between her sons could worsen if they were forced to share a room. *See* Defendants' Motion Exhibit 50. Regardless of whether the sons should be considered disabled, the increased potential for conflict between them with a smaller voucher made separate rooms not only an accommodation for them but for Plaintiff whose own disability would further undermine her ability to deal with the increased stress that would result.

17. Ultimately, Fatimah Escobar's clinical notes document some of the stress and mental anguish Plaintiff was suffering due to the uncertainty of her housing resulting from HCHA's wrongful actions. Ms. Escobar states:

> Ms. Brown complains of experiencing stress related to personal issues in life, specifically concerning her housing situation. Ms. Brown is experiencing excessive worry, fear, inability to control worry throughout the day, cognitive distortions, and physiological symptoms. Physiological symptoms include crying spells, nausea, tension, poor concentration, panic attacks, symptoms of depression, etc. Ms. Browns is having difficulty managing her anxiety related to the "unknowns" of her housing situation and as a result it has triggered symptoms of depression such as crying spells, feelings of hopelessness, helplessness, and low mood.

*Id.* Ms. Escobar's letter not only presents evidence of a causal connection between Defendants' actions and Plaintiff's injury, as well as proof of actual injury.

### F. Conclusion

18. Because Plaintiff has standing, is eligible for HCV assistance, and because there are genuine issues of material fact for Plaintiff's claims, Defendants' Motion for Summary Judgment should be denied.

### G. Prayer

19. For these reasons, Plaintiff asks the Court to deny Defendants' motion for summary judgment.

                        Respectfully submitted,

                        LAW OFFICES OF DAVID J. SADEGH

By:    */s/ David J. Sadegh*
        David J. Sadegh
        Texas Bar No. 24052822
        Southern District ID No. 1155650
        djsadegh@sadeghlaw.com
        6200 Savoy Dr., Ste. 520
        Houston, Texas 77036
        Tel. (713) 772-9622
        Fax. (832) 665 - 2035
        ATTORNEY FOR PLAINTIFF
        TIFFANY BROWN

## **CERTIFICATE OF SERVICE**

    I hereby certify that on the 13th day of June, 2017, a true and correct copy of the foregoing was served on Defendants' counsel by email or e-service.

                                      */s/ David J. Sadegh*
                                      David J. Sadegh