United States District Court
Southern District of Texas
**ENTERED**
January 11, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIFFANY BROWN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2847 |
| | § | |
| HARRIS COUNTY HOUSING | § | |
| AUTHORITY, et al., | § | |
| | § | |
| Defendants. | § | |

<u>**MEMORANDUM AND RECOMMENDATION**</u>

Pending before the court[1] is Defendants Harris County Housing Authority ("HCHA") and Horace Allison's ("Allison") (collectively, "Defendants") Amended Motion for Summary Judgment (Doc. 74). The court has considered the motion, the response, all other relevant filings, and the applicable law. For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED**.

## I.  Case Background

Plaintiff filed her complaint on September 30, 2015, alleging violations of the Fair Housing Act[2] ("FHA"), the Rehabilitation Act,[3] and 42 U.S.C. § ("Section") 1983.[4]

## A.  <u>Factual Background</u>

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. <u>See</u> Doc. 4, Ord. Dated Oct. 20, 2015.

[2]    42 U.S.C. §§ 3601 et seq.

[3]    29 U.S.C. § 794(a).

[4]    <u>See</u> Doc. 1, Pl.'s Compl.

Plaintiff first participated in the Housing Choice Voucher ("HCV") Program with HCHA in September 2008, after moving from Natchitoches, Louisiana, where she also received housing benefits.[5] Upon entrance to HCHA's HCV program, Plaintiff received a two-bedroom voucher for herself and two sons.[6]

Plaintiff requested an accommodation of a three-bedroom voucher based on her claim that one son had an attention-deficit disorder and the other had stress-induced asthma.[7] Plaintiff's psychologist, Ben Arnold, M.D. ("Dr. Arnold") did not find that either child had a disability but urged that the three-bedroom voucher be granted, explaining that an extra bedroom was warranted due to "chaotic and violent" interactions between Plaintiff's two sons.[8] Dr. Arnold further stated that Plaintiff "need[ed] to learn how to manage their behavior" and that "with therapy, this issue could be resolved in six months or less."[9]  HCHA approved Plaintiff's request for an additional bedroom for one year and advised that the accommodation would need to re-verified one year

---

[5]    See Doc. 76-1, Ex. 1 to Defs.' Am. Mot. for Summ. J., Letter Dated July 11, 2008, from the Hous. Auth. of the City of Natchitoches p. 1.

[6]    See Doc. 76-2, Ex. 2 to Defs.' Am. Mot. for Summ. J., Pl.'s Two Bedroom Voucher Dated Sept. 1, 2008 pp. 1-10.

[7]    See Doc. 76-3, Ex. 3 to Defs.' Am. Mot. for Summ. J., Verification of Disability Form Dated Aug. 8, 2008 pp. 1-2.

[8]    Id. pp. 1-4.

[9]    Id.

later.[10]  Plaintiff applied her voucher to two, three-bedroom homes, one from September 2008 to August 2009 and the other from September 2009 to September 2010.[11]  Both homes were foreclosed upon, forcing Plaintiff to move.[12]

Thereafter, Plaintiff requested the additional accommodations of the ability to rent from her mother at 110 percent of fair market value ("FMV").[13]  These requests were granted, and Plaintiff moved into a four-bedroom home purchased by her mother for Plaintiff's use in October 2010.[14]  Plaintiff's mother did not reside at this property.[15]

Plaintiff's annual recertification meeting took place on August 6, 2013.[16]  Plaintiff testified that she met with Sherika Mayweather who was "disrespectful" and "mocked [her] disabilities

---

[10]     See Doc. 76-4, Ex. 4 to Defs.' Am. Mot. for Summ. J., Reasonable Accommodation Approval Not. p. 1.

[11]     See Doc. 76-5, Ex. 5 to Defs.' Am. Mot. for Summ. J., Receiving Pub. Hous. Auth. Info. & Certification pp. 1-9; Doc. 76-6, Ex. 6 to Defs.' Am. Mot. for Summ. J, Family Report pp. 1-9; Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 11-12.

[12]     See Doc. 76-7, Ex. 7 to Defs.' Am. Mot. for Summ. J., Foreclosure Nots. pp. 1-2; Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 50, 192.

[13]     See Doc. 76-8, Ex. 9 to Defs.' Am. Mot. for Summ. J., Phone/Meeting Log from Aug.-Oct. 2010 p. 1.

[14]     See id.; Doc. 76-9, Ex. 10 to Defs.' Am. Mot. for Summ. J., Housing Assistance Payment Contract with Helen Brown.

[15]     See Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J, Pl.'s Dep. pp. 143-44.

[16]     See Doc. 76-10, Ex. 11 to Defs.' Am. Mot. for Summ. J., Phone/Meeting Log from July 2013 to Sept. 2013 p. 1; Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 76-89.

and [her] children's disabilities."[17]  Plaintiff was pregnant with her third child at the time of this appointment.[18]  Plaintiff was told that her voucher would be reduced to two bedrooms and, if she did not accept the voucher, she would lose her housing assistance.[19] After this meeting, Plaintiff complained to Beverly Burroughs ("Burroughs"), then-chief executive officer of HCHA, Tom McCasland, and filed a discrimination complaint with the Department of Housing and Urban Development ("HUD") on September 4, 2013, accusing the HCHA of discrimination based on gender and disability.[20]

On September 6, 2013, Plaintiff received a followup letter explaining that she needed to provide documentation to comply with her annual recertification and to justify continuation of the disability accommodations she was receiving.[21]  In the letter, Burroughs noted that HCHA did not have facts supporting the need for the accommodations and warned Plaintiff that, if she did not comply with her obligations, her HCV benefits would be terminated.[22]

---

[17]     Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. p. 79.

[18]     See id. pp. 87-88.

[19]     See id.; Doc. 76-11, Ex. 12 to Defs.' Am. Mot. for Summ. J., Pl.'s Hous. Discrimination Compl. p. 2.

[20]     See Doc. 76-36, Ex. 37 to Defs.' Am. Mot. for Summ. J., Aug. 14, 2013, Fax from Pl. to Burroughs; Doc. 76-37, Ex. 38 to Defs.' Am. Mot. for Summ. J., Aug. 7, 2013, Fax from Pl. to Tom McCasland; Doc. 76-11, Ex. 12 to Defs.' Am. Mot. for Summ. J., Pl.'s Hous. Discrimination Compl. pp. 1-5.

[21]     See Doc. 76-42, Ex. 43 to Defs.' Am. Mot. for Summ. J., Letter from Burroughs to Pl. Dated Sept. 6, 2013 pp. 1-2; Doc. 76-43, Ex. 44 to Defs.' Am. Mot. for Summ. J., Disability Accommodation Req. Form p. 1.

[22]     See id.

In response, Plaintiff filled out a request for an accommodation in which she asked for a third bedroom, explaining that her sons needed separate bedrooms.[23]  Plaintiff designated her mother as a person that could verify that her sons' disabilities warranted the request.[24]  HCHA responded on September 10, 2013, and outlined the inadequacy of the information provided by Plaintiff, informing Plaintiff that: (1) her request only addressed the need for a three-bedroom voucher, not the other two previously requested accommodations (renting from her mother and an above-market-rate voucher); (2) she had not provided verification of her sons' disabilities; (3) she needed to designate a disinterested third party, not her mother, to verify  her sons' disabilities; and (4) there must be a nexus between the verified disabilities and the requested accommodations.[25]

On September 23, 2013, Defendant HCHA denied the following accommodation request: a three-to-four bedroom voucher valued at 110 percent of FMV and the ability to lease from her mother.[26]  HCHA explained that it "lack[ed] sufficient information to establish the following: (1) That [her] sons [were] disabled as defined by

---

[23]    See Doc. 76-43, Ex. 44 to Defs.' Am. Mot. for Summ. J., Disability Accommodation Req. Form pp. 2-4.

[24]    See id. p. 4.

[25]    See Doc. 76-44, Ex. 45 to Defs.' Am. Mot. for Summ. J., Letter from Burroughs to Pl. Dated Sept. 10, 2013 pp. 1-2.

[26]    See Doc. 76-12, Ex. 13 to Defs.' Am. Mot. for Summ. J., Letter from HCHA Dated Sept. 23, 2013, Denying Pl.'s Accommodation Req. p. 1.

applicable federal or state law; (2) That [her] sons' conditions require[d] an additional bedroom or other requested accommodations; and (3) That the accommodations [she] requested [were] reasonable."[27] HCHA also explained that Plaintiff's housing subsidy would be reduced to a two-bedroom voucher at 100 percent of FMV and that by November 1, 2013, she would need to find a new place to rent that was not owned by her mother.[28]

Shortly thereafter, Plaintiff visited Fatimah Escobar ("Escobar"), a licensed professional counselor, on October 7, 2013, and complained to Escobar that she was pregnant and stressed, that she experienced panic attacks, anger, and helplessness, and that she was having issues with the housing authority.[29] Escobar diagnosed her with a panic disorder.[30] Escobar also noted that one of Plaintiff's sons had an attention-deficit disorder while the other experienced stress-related asthma attacks.[31] This notation was based on Plaintiff's disclosures as Plaintiff's sons did not attend this appointment.[32] Escobar also recorded Plaintiff's past history of a stress-induced miscarriage in 2007 and abusive

---

[27]    See id.

[28]    See id.

[29]    See Doc. 77-2, Ex. 49 to Defs.' Am. Mot. for Summ. J., Initial Assessment from Escobar Dated Oct. 7, 2013 p. 1.

[30]    See id.

[31]    See id.

[32]    See id.

romantic relationships.[33]

On November 22, 2013, Escobar wrote a letter on behalf of Plaintiff, stating that beginning on October 7, 2013, she had been treating Plaintiff for symptoms of anxiety, depression, and panic.[34] Escobar explained that she had diagnosed Plaintiff as having a generalized anxiety disorder and panic disorder with agoraphobia.[35] Escobar expressed that "Plaintiff complain[ed] of experiencing stress related to personal issues in life, specifically concerning her housing situation . . . [and was] having difficulty managing her anxiety related to the 'unknowns' of her housing situation, and, as a result, it has triggered symptoms of depression such as crying spells, feelings of hopelessness, helplessness, and low mood."[36] Additionally, the conflicts between Plaintiff's sons were noted, and Escobar opined that "[t]he oldest son would benefit from having his own room as a way to cope and avoid the youngest son's inability to control his hyperactive and impulsive behaviors."[37]

HCHA determined this letter insufficient, and, on January 2, 2014, HCHA sent Plaintiff a letter explaining that it would be terminating the contract with her mother effective February 28,

---

[33]   See id. pp. 1-2.

[34]   See Doc. 77-3, Ex. 50 to Defs.' Am. Mot. for Summ. J., Letter from Escobar Dated Nov. 22, 2013 p. 1.

[35]   See id.

[36]   Id.

[37]   Id. pp. 1-2.

2014.[38]   Plaintiff was also warned that she was required to terminate that lease in order to remain a part of the HCV program.[39]

Eight months later, on October 14, 2014, HUD issued its decision after investigating Plaintiff's housing discrimination complaint, finding that there was no reasonable cause to believe that HCHA discriminated against Plaintiff based on a disability.[40] In the decision, HUD found that Plaintiff did not have adequate supporting documentation for her sons' claimed disabilities and that the adverse actions taken by HCHA had been initiated before Plaintiff filed the housing discrimination complaint.[41]

Plaintiff requested an informal hearing with HCHA on November 7, 2014, and the hearing took place on February 17, 2015.[42] Plaintiff was represented by an attorney.[43]   Defendant Allison, the hearing officer, concluded that Plaintiff could no longer lease from a family member because she had not connected this requested accommodation to her disability but found that she potentially

---

[38]    See Doc. 76-13, Ex. 14 to Defs.' Am. Mot. for Summ. J., Letter Dated Jan. 2, 2014 p. 1.

[39]    See id.

[40]    See Doc. 76-14, Ex. 15 to Defs.' Am. Mot. for Summ. J., HUD Letter Dated Oct. 14, 2014, p. 1.

[41]    See Doc. 76-14, Ex. 15 to Defs.' Am. Mot. for Summ. J., Determination of No Reasonable Cause & Letter of Finding of Compliance pp. 9-12.

[42]    See Doc. 76-15, Ex. 16 to Defs.' Am. Mot. for Summ. J., Pl.'s Informal Hr'g Req. p. 1; Doc. 76-16, Ex. 17 to Defs.' Am. Mot. for Summ. J., Informal Hr'g Decision Dated Feb. 17, 2015.

[43]    See Doc. 76-16, Ex. 17 to Defs.' Am. Mot. for Summ. J., Informal Hr'g Decision Dated Feb. 17, 2015 p. 1.

qualified for a three-bedroom voucher at 110 percent of FMV.[44]   On March 13, 2015, Plaintiff was sent notice of her final move-out, voucher-issuance appointment, at which time HCHA was to give her a moving packet and explain the moving requirements.[45]  Plaintiff did not attend this appointment.[46]

HCHA sent Plaintiff a letter dated March 30, 2015, informing her that her housing assistance would be terminated effective April 30, 2015, due to her failure to comply with her obligations under the HCV program.[47]  The letter noted that Plaintiff had not appeared for two mandatory moving and recertification appointments.[48]

Another informal hearing took place on April 23, 2015.[49]  The purpose of this hearing "was to determine whether [Plaintiff was] entitled to the reinstatement of her assistance in the Section 8[50] [HCV] Program."[51]   Allison, the hearing officer, concluded that

---

[44]    See id. p. 5.  Based on recent changes to HCHA's HCV Program's Administrative Plan, the hearing officer found that Plaintiff "could potentially qualify for a 3-bedroom voucher for a qualified unit and an increase in rental assistance of 110% FMV."  See Doc. 76-16, Ex. 17 to Defs.' Am. Mot. for Summ. J., Hearing Officer's Dec. Dated Feb. 17, 2015.

[45]    See Doc. 76-17, Ex. 18 to Defs.' Am. Mot. for Summ. J., Final Move Out Voucher Issuance Appointment Not. p. 1.

[46]    See Doc. 76-19, Ex. 20 to Defs.' Am. Mot. for Summ. J., Termination of Rental Assistance Letter Dated Mar. 30, 2015.

[47]    See id.

[48]    See id.

[49]    See Doc. 76-20, Ex. 21 to Defs.' Am. Mot. for Summ. J., Informal Hr'g Decision Dated May 11, 2015, pp. 1-7.

[50]    42 U.S.C. § 1437f.

[51]    Id. p. 1.

Plaintiff had received the proper form of notice for the moving appointments and failed to appear for these appointments.[52]  As a result, HCHA could not collect the information it needed to move Plaintiff to a new unit.[53]  As this violated HUD regulations and the administrative plan put forth by HCHA, the decision to terminate Plaintiff's benefits was upheld.[54]

Plaintiff had appealed the earlier HUD decision finding no discrimination, and, on June 10, 2015, HUD reversed its decision and issued a determination of HCHA's noncompliance.[55]  HUD found that the letter from Escobar supported the disability-related need for a third bedroom for her sons.[56]  Additionally, HUD concluded that HCHA did not act in accordance with HUD regulation 24 C.F.R. § 982.306(d) when it rescinded Plaintiff's accommodation of renting from her mother in 2013 after allowing the accommodation in 2010.[57]

As to the accommodation of a voucher at 110 percent above FMV, HUD looked to Public and Indian Housing ("PIH") Notice 2013-18, which stated that "one of the purposes of an exception payment standard is to ensure that a family with a person with disabilities

---

[52]     See id. p. 5.

[53]     See id.

[54]     See id. pp. 5-7.

[55]     See Doc. 76-20, Ex. 21 to Defs.' Am. Mot. for Summ. J., HUD Letter of Determination of Noncompliance Dated June 10, 2015, pp. 1-5.

[56]     See id. pp. 3-4.

[57]     See id. p. 4.

10

can rent a unit that meets the disabled person's needs" and "[e]xception payment standards must remain in effect until or unless a higher exception payment standard is warranted, requested, and subsequently approved."[58]   HUD concluded that HCHA must give Plaintiff the accommodations of a three-bedroom voucher at 110 percent of fair market value and the ability to rent from her mother.[59]  Additionally, because HUD found that these accommodations applied retroactively, HCHA owed Plaintiff's mother for rental arrears incurred as a result of Plaintiff's continued residence in her mother's rental property.[60]

In the course of this lawsuit, Defendants have discovered that Plaintiff received from various sources child support payments, income, credit cards, vehicles, grants, and money that were not reported to HCHA.[61]

Plaintiff is still receiving HCV benefits and resides in her mother's rental property.[62]

## B.  Procedural Background

Plaintiff originally filed her complaint under the pseudonym

---

[58]     Id.

[59]     See id. pp. 4-5.

[60]     See id. p. 5.

[61]     See Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 25, 30, 32, 41-43, 45-49, 56-58, 77-78, 146-169, 171-75, 194-95, 204; Doc. 77-4, Ex. 61 to Defs.' Am. Mot. for Summ. J., Expert Rep. of Dwight D. Steward pp. 1-41.

[62]     See Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 8, 69-71; Doc. 75, Defs.' Am. Mot. for Summ. J. p. 6.

"Jane Doe" on September 30, 2015, alleging violations of Section
504 of the Rehabilitation Act and the FHA, wrongful termination
under the Section 8 regulations, and claims for due process and
equal protection.[63]   Plaintiff claims that her mother was not fully
reimbursed for rental arrears in 2015 and seeks that amount in
damages. She also seeks mental anguish damages allegedly suffered
as a result of HCHA's actions.

    HCHA and Allison moved to dismiss Plaintiff's claims.[64]   On
August 31, 2016, the court issued a memorandum, recommending that
Plaintiff's claims of violations of her rights to due process and
equal protection and the wrongful termination of Section 8 benefits
be dismissed.[65]   The court also recommended the dismissal of
Defendants Tom McCasland, Debra McCray, and Burroughs on the
grounds that service was insufficient.[66]   No objections were filed,
and the Memorandum and Recommendation was adopted in full on
September 20, 2016.[67]   Pending before the court is Defendants'
motion for summary judgment on the remaining claims.[68]

## II.  Legal Standard

---

[63]     See Doc. 1, Pl.'s Compl.

[64]     See Doc. 8, Defs.' Mot. to Dismiss; Doc. 9, Def. HCHA's Mot. to
Dismiss; Doc. 23, Defs.' Supplemental Mot. to Dismiss.

[65]     See Doc. 36, Mem. & Recom. Dated Aug. 31, 2016.

[66]     See id. p. 9.

[67]     See Doc. 40, Ord. Dated Sept. 20, 2016.

[68]     See Doc. 67, Defs. Mot. for Summ. J.; Doc. 74, Defs.' Am. Mot. for
Summ. J.

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party. See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (1992). If the moving party carries its burden, the nonmovant may not rest on the allegations or denials in her pleading but must respond with evidence showing a genuine factual dispute. Stauffer, 741 F.3d at 581 (citing Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)).

### III. Analysis

13

The court first considers whether Allison is immune from suit, before reaching HCHA's arguments that it is entitled to judgment on Plaintiff's claims arising under the FHA and Rehabilitation Act.

## A.   Immunity

Defendants argue that the claims against Allison should be dismissed because he is entitled to either absolute or qualified immunity from suit.  Plaintiff does not address these arguments in her response.

The Supreme Court has expanded absolute immunity to "certain others who perform functions closely associated with the judicial process." Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); see also Butz v. Economou, 438 U.S. 478, 513 (1978)("There can be little doubt that the role of the modern federal hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge."); O'Neal v. Miss. Bd. of Nursing, 113 F.3d 62, 65 (5th Cir. 1997)("Although the Supreme Court has been rather conservative in its grants of absolute immunity, it has recognized that there are some officials whose duties require a full exemption from liability.  Such officials include . . . certain 'quasi judicial' agency officials who, irrespective of their title, perform functions essentially similar to those of judges or prosecutors, in a setting similar to court.").  Courts look not to the "rank or title or location within the Government," instead focusing on "the nature of the responsibilities of the individual official" in

determining whether absolute immunity should apply.  O'Connor v. New York Hous. Auth., No. 08-CV-3623(CBA)(LB), 2010 WL 1741369, at *7 (E.D.N.Y. Mar. 24, 2010)(unpublished)(internal quotation marks omitted)(quoting Cleavinger, 474 U.S. at 201).

In O'Neal, the court described this as "quasi-judicial immunity" and explained that the Supreme Court in Butz provided the following six factors for courts to utilize in determining whether absolute immunity applies:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of the error on appeal.

O'Neal, 113 F.3d at 65 (quoting Cleavinger, 474 U.S. at 202); see also Butz, 438 U.S. at 512.

In O'Connor, the court found that a hearing officer working for the New York City Housing Authority was entitled to absolute immunity, as he acted in a quasi-judicial capacity in his role as hearing officer.  O'Connor, 2010 WL 1741369, at *8.  In making this determination, the court looked to procedural protections that were provided for the plaintiff, including representation by counsel, the presentation of testimony and evidence, and the possibility of appeal.  Id.  Other courts have found that other types of hearing officers also have been entitled to absolute immunity.  See, e.g., B.D.S. v. Southold Union Free Sch. Dist., No. CV-08-1319(SJF)(WDW),

2009   WL   1875942,   at   **18-19   (E.D.N.Y.   June   24, 2009)(unpublished)(granting absolute immunity to a hearing officer at the state's department of education); <u>DeMerchant v. Springfield Sch. Dist. & Dan Jerman</u>, No. 1:05-CV-316, 2007 WL 495240, at *3 (D. Vt. Feb. 9, 2007)(unpublished)(granting an educational hearing officer absolute immunity); <u>Gyadu v. Workers' Comp. Comm'n</u>, 930 F. Supp. 738, 748 (D. Conn. 1996)(granting absolute immunity to a worker's compensation commissioner).

In this case, Allison was the officer who presided at Plaintiff's hearings.[69]   Plaintiff's allegations against Allison point to his statements and actions during the administrative proceedings, and Plaintiff complains that Allison upheld the HCHA decision in the absence of evidence.[70]   Plaintiff does not provide any allegations about Allison outside of his role as the hearing officer in her case.

Plaintiff's case presented before Allison was adversarial in nature, and she was represented by an attorney.   The administrative plan provided by HCHA explains that, in participating in an informal hearing, the participant has a right to discovery and counsel and may present evidence.[71]   Additionally, the decision of

---

[69]   <u>See</u> Doc. 76-58, Ex. 62 to Defs.' Mot. for Summ. J., Aff. of Allison p. 1.

[70]   <u>See</u> Doc. 20, Pl.'s 1st Am. Compl. pp. 8-10.

[71]   <u>See</u> Doc. 76-25, Ex. 26 to Defs.' Mot. for Summ. J., HCHA Admin. Plan pp. 206-08.

the hearing officer must be in writing.[72]  Plaintiff was afforded the opportunity for multiple hearings regarding her housing situation, and her case was also reviewed by HUD.  These factors demonstrate that Allison was acting in a quasi-judicial capacity in the proceedings as a hearing officer, entitling him to absolute immunity.

Summary judgment should be granted on any remaining claims against Allison.[73]

## B.  **Disability Discrimination**

Plaintiff makes claims for disability discrimination under the Fair Housing Act and the Rehabilitation Act.  Under the Fair Housing Act, it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny a dwelling" due to the renter's handicap.  42 U.S.C. § 3604(f)(1).  Discrimination means "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

> To prevail on a claim under [42 U.S.C. § 3604(f)(3)], a plaintiff must prove all of the following elements: (1) that the plaintiff or [her] associate is handicapped

---

[72]    See id.

[73]    As the court finds that Allison has absolute immunity, it does not reach the issue of whether he is also entitled to qualified immunity. Additionally, Plaintiff's claims against Allison under Section 1983 were dismissed by the court.  See Doc. 36, Mem. & Recom. pp. 14-16; Doc. 40, Ord. Adopting Mem. & Recom.  Thus, if this recommendation is adopted, Allison should be dismissed as a party to this suit.

within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the disability; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

Chavez v. Aber, 122 F. Supp.3d 581, 595 (W.D. Tex. 2015)(citations and internal quotations omitted); see also Oxford House, Inc. v. Browning, __ F. Supp.3d __, 2017 WL 3140744, at *9 (M.D. La. July 24, 2017)(slip op.).

Section 504 of the Rehabilitation Act prohibits discrimination against individuals with handicaps in the context of programs that receive federal financial assistance. 29 U.S.C. § 794. The accompanying regulations state that "no otherwise qualified individual with handicaps . . . shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance from the Department of Housing and Urban Development." 24 C.F.R. §§ 8.1, 8.4(a). The Rehabilitation Act "impose[s] upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals." Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005).

Courts analyze these claims together, finding that "[b]ecause the relevant portions of the [Fair Housing Act], [the] ADA, and . . . the Rehabilitation Act offer the same guarantee that a covered

entity . . . must provide reasonable accommodations . . . to people with disabilities, analysis of a reasonable accommodation claim under the three statutes is treated the same." <u>Browning</u>, 2017 WL 3140744, at *7 (quoting <u>Logan v. Matveevskii</u>, 57 F. Supp.3d 234, 253 (S.D.N.Y. 2014)(internal quotation marks omitted)(alterations in original)).

Before the court looks at the merits of Plaintiff's disability discrimination claim, it must consider two preliminary matters: whether Plaintiff's lack of candor about her assets and income disqualifies her from the housing program and from the ability to complain of discrimination and whether HCHA is prohibited by regulation from recertifying the need for an accommodation.

## 1.  Lack of Candor

While in the course of conducting discovery in this case, HCHA discovered facts that call into question Plaintiff's eligibility for housing assistance during, and preceding, the time presently in dispute.  HCHA argues that in determining a family's eligibility for housing assistance, it must consider regular and non-monetary contributions or gifts from persons not residing with the assisted family.[74]  When a family's income is less than $600 per month, the family is required to complete a monthly expense and income

---

[74]   <u>See</u> Doc. 76-24, Ex. 26 to Defs.' Am. Mot. for Summ. J. Admin. Plan, Chap. 6-I.J., p. 69.  Under the Plan, regular contributions include:  regular payments of a family's bills (e.g., utilities, telephone, rent, credit cards, and car payments), cash provided on a regular basis, and in-kind contributions of groceries and clothing.  <u>Id.</u>

contribution form documenting monthly expenses and the source of revenue for these expenses.[75]   HCHA may terminate benefits if a participant makes a false statement in connection with obtaining benefits.[76]

At her deposition, Plaintiff admitted that while receiving housing assistance from HCHA, she received Pell grants,[77] income from hair styling,[78] income from working at Wal-Mart and other businesses,[79] the use of cars from her mother and other family members,[80] income from writing correspondence on behalf of others,[81] other government assistance,[82] and cash gifts from her mother.[83] Plaintiff also testified that her mother paid for her internet connection, cable television, all utilities, and cell phone,[84] and that her mother purchased a Volvo for her use and paid for the car insurance.[85]   Plaintiff also admitted having a credit card in

---

[75]    See id. p. 142.

[76]    See id. pp. 175-79.

[77]    See Doc. 77-1, Ex. 8 to Def.'s Am. Mot. for Summ. J., Pl.'s Dep. pp. 40-43.

[78]    Id. pp. 46-48.

[79]    Id. pp. 49-50, 54-55.

[80]    Id. pp. 52, 77-78.

[81]    Id. pp. 57-58.

[82]    Id. p. 146.

[83]    Id. pp. 146-148, 163-64, 166.

[84]    Id. pp. 152-57.

[85]    Id. pp. 162-64, 194-95.

another name.[86]   HCHA's economic expert estimated that, based on Plaintiff's deposition testimony, Plaintiff's estimated total household income ranged from $14,996 to $21,236 per year and her expenses ranged between $19,360 to $30,493 per year.[87]

HCHA argues that the above admissions make her unqualified for the HCV program and, therefore, Plaintiff may not complain about her temporary termination from the program.   HCHA cites 24 C.F.R. §§ 982.551-52, contending that, due to Plaintiff's fraudulent conduct, she could be terminated from the program.   The court considers whether this after-acquired evidence precludes Plaintiff's ability to redress perceived discrimination by HCHA.

In McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 356 (1995), the Supreme Court decided "whether all relief must be denied when an employee has been discharged in violation of the [Age Discrimination in Employment Act ("ADEA")] and the employer later discovers some wrongful conduct that would have led to discharge if it had been discovered earlier."   Looking to previously decided cases, the Court explained that it had "rejected the unclean hands defense 'where a private suit serves important public purposes.'"   Id. at 360.   The Court held that after-acquired evidence of an employee's misconduct did not prevent the employer's liability as "[t]he employer could not have been motivated by

---

[86]   Id. pp. 166-71.

[87]   See Doc. 77-4, Ex. 61 to Defs.' Am. Mot. for Summ. J., Expert Report of Dwight D. Steward, Ph.D. p. 6.

knowledge it did not have," but found that the after-acquired evidence could impact the potential remedies.  Id. at 360–63.

District courts have applied McKennon in the housing context, rejecting an unclean hands defense.  See, e.g., Mancuso v. Douglas Elliman LLC, 808 F. Supp.2d 606, 631-32 (S.D.N.Y. 2011)(citing Ramirez v. Greenpoint Mortg. Funding, Inc., 263 F.R.D. 627, 638 (N.D. Cal. 2010), and Utah Labor Comm'n v. Paradise Town, 660 F. Supp.2d 1256, 1263 (D. Utah 2009)).  The court finds these cases persuasive and agrees that, under McKennon, the after-acquired evidence of Plaintiff's potential ineligibility does not prevent HCHA from being found liable for discrimination.  However, Plaintiff's lack of qualification to receive a HCV voucher, if proved, may limit the remedy that Plaintiff may receive in this case.  See, e.g., Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106, 1108-09 (5th Cir. 1995)("The rationale underlying consideration of after-acquired evidence is that the employer should not be impeded in the exercise of legitimate prerogatives and the employee should not be placed in a better position than he would have occupied absent the discrimination.").

The court concludes that the after-acquired evidence does not preclude Plaintiff from bringing discrimination claims under the FHA and Rehabilitation Act but may affect her ability to recover damages for that discrimination.

**2.  Recertification**

Plaintiff contends that HCHA violated the FHA and the Rehabilitation Act when it sought recertification of her need for a disability-related accommodation. Plaintiff points to 24 C.F.R. § 982.306(d), contending that the regulation provides that once an accommodation is awarded, it cannot be taken away. Defendant argues that Plaintiff is not qualified for the HCV program and that there was no nexus between her mental health disability and the requested accommodation of renting from her mother.

HCHA's administrative plan requires that, in the event that "the need for the accommodation is not readily apparent or known to HCHA, the family must explain the relationship between the requested accommodation and the disability."[88] Additionally, it is required that there "be an identifiable relationship between the requested accommodation and the individual's disability."[89] These requirements speak to the element that an accommodation is necessary for equal enjoyment of the housing by the disabled person. See Chavez, 122 F. Supp.3d at 594-95.

The regulation relied upon by Plaintiff, 24 C.F.R. 982.306(d), reads as follows:

> The [Public Housing Authority ("PHA")] must not approve a unit for rental using a [HCV] if the owner is the parent, child, grandparent, grandchild, sister, or brother of any member of the family, unless the PHA determines that approving the unit would provide

---

[88] See Doc. 76-24, Ex. 26 to Defs.' Mot. for Summ. J., HCHA Admin. Plan p. 12.

[89] See id.

reasonable accommodation for a family member who is a person with disabilities. This restriction against PHA approval of a unit only applies at the time a family initially receives tenant-based assistance for occupancy of a particular unit, but does not apply to PHA approval of a new tenancy with continued tenant-based assistance in the same unit.

Notably, this regulation does not state that HCHA may never review a person's claim of a qualifying disability and requested accommodation, rather it merely provides that once a determination has been made to grant an exception to the general prohibition of renting from a family member as an accommodation for a disability, the general prohibition does not apply to a new tenancy in the same unit. Because the information sought by HCHA was part of the yearly recertification of eligibility, this section does not prohibit HCHA from engaging in an interactive process as required by HCHA's administrative plan.

The HCHA administrative plan requires a nexus between the disability and the requested accommodation and requires that the participant provide evidence of a disability where the disability is not readily apparent.[90] Therefore, it was reasonable for HCHA to request information regarding Plaintiff's claims of disabilities when there was no evidence in her file supporting the accommodations she had previously received.[91]

---

[90]    See id. p. 13.

[91]    In fact, Dr. Arnold did not find that Plaintiff's sons were disabled, but opined that separate bedrooms and therapy on a temporary basis would be beneficial to address the conflicts between the boys. See Doc. 76-3, Ex. 3 to Defs.' Am. Mot. for Summ. J., Verification of Disability Form Dated Aug. 8, 2008

The FHA regulation, 24 C.F.R. 982.306(d), does not prevent HCHA from recertifying Plaintiff's continued eligibility for disability-related accommodations.

### 3. Disability Discrimination

Turning to the merits of the discrimination claim, in order to make a prima facie showing of disability discrimination, Plaintiff must offer proof that she or a child in her household suffered from a disability and that accommodation of the disability may be necessary to afford the disabled person an equal opportunity to use and enjoy the dwelling.   Chavez, 122 F. Supp.3d at 595.

Initially, Plaintiff claimed that a three-bedroom voucher was necessary based on one son's alleged attention-deficit disorder, one son's stress-induced asthma, and their inability to share a room without discord.  During the recertfication process in 2013, Plaintiff abandoned this claim of disability and asserted, for the first time, that she was disabled.[92]  In support, Plaintiff offered Escobar's initial assessment summary and letter, both of which disclosed that Plaintiff suffered from anxiety and panic disorders

pp. 1-4.

[92]     By abandoning her claim that her sons were disabled in November 2013, Plaintiff impliedly concedes that she could produce no evidence that either son was disabled when asked by HCHA to provide evidence of the disabilities during the recertification in August/September 2013.
        At her deposition, Plaintiff admitted that she was not sure if any medical doctor had told her that either son was disabled, that either son needed his own bedroom or that either son needed to live in a residence rented from her mother.  See Doc. 77-1, Ex. 8 to Defs.' Am. Mot. for Summ. J., Pl.'s Dep. pp. 97-100.  The court assumes, then, that the only claimed disabled person in the household for whom the accommodation of renting from Plaintiff's mother is based was Plaintiff.

caused by a number of factors, including past abusive relationships and HCHA's demand for documentation supporting her claim of a disability.[93]

During the administrative review of Plaintiff's housing voucher, Escobar supported Plaintiff's claim for the accommodation of a three-bedroom house by informing HCHA that Plaintiff's sons were unable to control their interactions.[94]  Notably missing from Escobar's letter is any discussion of Plaintiff's need to rent from her mother.[95]

At Escobar's deposition she was directly asked whether it was her professional opinion that Plaintiff must reside in a home that was owned by her mother and whether Escobar believed that Plaintiff's renting from her mother was a reasonable accommodation for Plaintiff's anxiety and panic disorders.[96]  Escobar answered negatively to both questions.[97]  Escobar also stated that Plaintiff was not disabled as that term was defined by the Social Security

---

[93]    See Doc. 77-2, Ex. 49 to Defs.' Am. Mot. for Summ. J., Initial Assessment from Escobar Dated Oct. 7, 2013 p. 1; Doc. 77-3, Ex. 50 to Defs.' Am. Mot. for Summ. J., Letter from Escobar Dated Nov. 22, 2013 p. 1.

[94]    See Doc. 77-3, Ex. 50 to Defs.' Am. Mot. for Summ. J., Letter from Escobar Dated Nov. 22, 2013 p. 1.

[95]    See Doc. 76-48, Ex. 51 to Defs.' Am. Mot. for Summ. J., Escobar's Req. for Reasonable Accommodation Form Dated Feb. 3, 2014 p. 1.

[96]    See Doc. 77-5, Ex. 63 to Defs.' Am. Mot. for Summ. J., Escobar's Dep. p. 77-78.

[97]    See id.  Escobar also admitted that she checked a box in error on the form she submitted that indicated that Plaintiff suffered from a developmental disability.  See id. p. 79.

Administration and that she was not a person with physical or mental impairments as defined by HUD, the FHA, or the Rehabilitation Act.[98]

As Escobar provided the only factual link between Plaintiff's claimed disability and the need for the requested accommodation, Plaintiff cannot raise a fact issue demonstrating that she was either disabled or that renting from her mother was a reasonable accommodation for that disability.

Plaintiff's disability claims under the FHA and Rehabilitation Act must fail.

## C. **Retaliation**

Plaintiff asserts a retaliation claim under the Fair Housing Act, contending that HCHA retaliated against her by denying her requested accommodations because she filed a housing discrimination complaint.  HCHA counters that its actions were not retaliatory because, prior to Plaintiff's filing the housing discrimination complaint, she was told that she had to provide verification of her disability and the need for the requested accommodations and that her failure to do so would result in the termination of the accommodations.

Under the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any

---

[98]     See id.

27

rights granted or protected by section . . . 3604 . . . of [the FHA]." 42 U.S.C. § 3617.  This section "safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their [FHA] rights." Texas v. Crest Asset Mgmt., Inc., 85 F. Supp.2d 722, 733 (S.D. Tex. 2000)(citations omitted).  "It is not limited to those who used some sort of potent force or duress, but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus."  Id. (quoting Michigan Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 347 (6th Cir. 1994)(internal quotation marks omitted)).

In analyzing retaliation claims, courts utilize the same standards as in employment discrimination claims.  Crest Asset Mgmt., Inc., 85 F. Supp.2d at 733 (citations omitted); see also Chavez, 122 F. Supp.3d at 599.  Without direct evidence of retaliation, a plaintiff "bears the burden of proving that the [defendant's] actions were motivated by the considerations prohibited by the statute." Crest Asset Mgmt., Inc. 85 F. Supp.2d at 733 (quoting Hypes v. First Commerce Corp., 134 F.3d 721, 726 (5th Cir. 1998)).  The burden-shifting framework applied in disparate treatment cases under Title VII is also used in retaliation cases. Id. (citing Long v. Eastfield Coll., 88 F.3d 300, 304 (5th Cir. 1996)(citing McMillan v. Rust Coll., Inc., 710

F.2d 1112, 1116 (5th Cir. 1983))).

To meet her prima facie burden for a retaliation claim, a plaintiff is required to show that "(1) [she] engaged in an activity that [the FHA] protects; (2) [she] was subject to an adverse [action by the defendant]; and (3) a causal connection exists between the protected activity and the adverse . . . action." Cox v. Phase III, Invs., No. H-12-3500, 2013 WL 3110218, at *10 (S.D. Tex. June 14, 2013)(unpublished); Chavez, 122 F. Supp.3d at 599; Scruggs v. Marshall Hous. Auth., 2000 WL 1273473, at *2 (5th Cir. Aug. 23, 2000)(unpublished). Protected activities include filing a housing discrimination complaint and making a request for a reasonable accommodation. Oxford House, Inc. v. City of Baton Rouge, La., 932 F. Supp.2d 683, 700 (M.D. La. 2013)(unpublished)(citing Drake v. Nicholson, 324 F. App'x 328, 331 (5th Cir. 2009)("[f]iling an administrative complaint constitutes a protected activity.")); Chavez, 122 F. Supp.3d 581, 599-600 ("Protected activities under the FHA include the request for a reasonable accommodation for handicapped persons.")(citations and alterations omitted).

Plaintiff has satisfied the first two elements of a prima facie case of retaliation by showing that she engaged in a protected activity by filing a housing discrimination complaint and that, thereafter, HCHA denied her requested accommodations and reduced her housing voucher. The closeness in time between the

protected activity (September 4, 2013) and the reduction in Plaintiff's benefits (September 23, 2013) satisfies the causal nexus at the prima facie stage of the analysis. McCoy v. City of Shreveport, 492 F.3d 551, 562 (5th Cir. 2007)(finding in the Title VII context that close timing between a protected activity and an adverse action may provide the causal connection required to establish a prima facie case of retaliation).

The burden then shifts to HCHA to demonstrate that it had a legitimate, non-discriminatory reason for denying Plaintiff's requested accommodations and terminating her housing voucher. Crest Asset Mgmt., Inc., 85 F. Supp.2d at 733. As outlined in detail above, HCHA repeatedly and unsuccessfully sought information from Plaintiff connecting her disability to the requested accommodation of renting from her mother.[99] The court finds that HCHA has articulated legitimate, non-discriminatory reasons for denying Plaintiff's requested accommodation and terminating her voucher for non-compliance with HCHA's requirements.

To establish pretext, a plaintiff must raise a factual dispute as to whether the adverse action would have occurred but for her protected conduct. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2534 (2013). A plaintiff may create

---

[99]     The court acknowledges that HUD ultimately found that HCHA should have granted Plaintiff the accommodation of renting from her mother. However, the HUD finding overlooked the fact that Escobar never mentioned Plaintiff's need to rent from her mother. As such, its probative value is nil with regard to whether Plaintiff was subject to discrimination.

such a dispute by producing circumstantial evidence sufficient to create an issue as to whether the defendant's reasons are a pretext or by demonstrating that the proffered non-discriminatory reasons are false or unworthy of credence.  Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005) (holding that a fact issue may be created by circumstantial evidence); Vaughn v. Woodforest Bank, 665 F.3d 632, 637 (5th Cir. 2011) (holding that pretext may be established by proving proffered reasons unworthy of credence).  An offered reason is unworthy of credence if the plaintiff can show it was not the real reason for the action.  See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 899 (5th Cir. 2002).

While the close timing between a protected activity and an allegedly retaliatory action may provide the causal connection required to satisfy a prima facie case of retaliation, it is not sufficient after a defendant has offered a legitimate, non-discriminatory reason for its adverse action.  Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997).  Under the burden-shifting rubric, at the pretext stage of the analysis, a plaintiff must offer some evidence from which a jury could infer that retaliation was the real motive.  Id.

In the present case, Plaintiff fails to point to any retaliatory action or statement by an HCHA employee that would raise a fact issue that Plaintiff was retaliated against because

she filed a complaint of discrimination.[100]

HCHA is entitled to judgment on this claim.  As the court recommends that summary judgment be granted on Plaintiff's claims, the court need not reach the parties' arguments on damages.

### IV.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED.**

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 11th day of January, 2018.

_____
U.S. MAGISTRATE JUDGE

---

[100]   While Plaintiff has complained that at her initial recertification interview in August 2013, a HCHA employee was disrespectful and belittled her claim of disabilities, these actions pre-dated the filing of her complaint of discrimination and therefore are not evidence of retaliation.

32